UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**NICOLE TYMMS**,

    Plaintiff,

v.    Case No. 8:23-cv-1982-WFJ-SPF

**THE PANTHER GROUP, INC.**,

    Defendant.

_____/

## ORDER

Before the Court is The Panther Group, Inc.'s ("Defendant") Motion to Dismiss (Dkt. 22) Nicole Tymms' ("Plaintiff") Amended Complaint (Dkt. 18). Plaintiff has responded in opposition (Dkt. 24) and Defendant has not replied. Upon careful consideration, the Court denies Defendant's Motion.

## BACKGROUND

The Court recites the facts as alleged by the Amended Complaint. Plaintiff began her employment with Defendant on February 18, 2021. Dkt. 18 at 3. In October of the same year, she discovered that she was pregnant. *Id.* Plaintiff consequently "communicated to Defendant that she needed to plan maternity leave[.]" *Id.* And, throughout December, Plaintiff worked with Defendant to arrange her dates and "make sure everything [was] good to go." *Id.* at 3–4.

On January 6, 2022, Stephanie Gomez, an employee of Defendant, contacted Plaintiff to confirm her requested leave. *Id.* at 4. Ms. Gomez stated that "[Defendant] will be holding your spot for when you return! I told them 2–3 months for the maternity leave period and we can play that by ear. Congratulations and I hope you and your family are excited!!" *Id.* Plaintiff began leave the same day. *Id.*

Plaintiff nevertheless claims that—instead of being granted maternity leave—she was effectively terminated without notice. *Id.* Plaintiff received her first indication of termination on January 22, 2022, when her insurance coverage was denied after giving birth to her child. *Id.* at 5. Plaintiff subsequently contacted Sue Campbell, another employee of Defendant who works in human resources, to inquire about her insurance and employment situation. *Id.*

Ms. Campbell informed Plaintiff that "I have that you were terminated on January 6, 2022, for maternity leave. Unfortunately, once you are terminated . . . your insurance benefits are cancelled that day." *Id.* (cleaned up). Defendant further explained that "[y]ou will have a job waiting, but since you are not getting paid during this time, no deductions would be taken out of a check. When you are terminated for any reason, even when you are coming back, your benefits are terminated until your return." *Id.* at 6.

Notwithstanding the aforementioned communications, on March 3, 2022, Defendant informed Plaintiff that the insurance carrier "[would] honor her

2

unprotected maternity leave" contingent upon the payment of Plaintiff's insurance premiums. *Id.* (cleaned up). This retroactive coverage allegedly worked to Plaintiff's disadvantage. Plaintiff claims that, prior to childbirth, she and her husband made proactive payments to an Advent Health Hospital savings plan to cover the anticipated deductible of Plaintiff's medical bills. *Id.* at 7. Because there was no insurance in place at the time of the birth, however, the hospital allegedly applied Plaintiff's savings plan directly to Plaintiff's medical bills instead. *Id.* Thus the substantive coverage was purportedly less than it would have been if Plaintiff never lost her health insurance benefits without notice. *Id.* And Plaintiff was left with a $6,500 bill for her deductible, which she had functionally already paid through the savings plan. *Id.*

On November 24, 2023, Plaintiff filed her Amended Complaint. *Id.* at 1. Plaintiff asserts three counts against Defendant: Count I—violation of Title VII of the Civil Rights Act of 1964; Count II—violation of the Florida Civil Rights Act of 1992 ("FCRA"); and Count III—Violation of the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"). *Id.* at 8–11. Defendant now moves to dismiss each of Plaintiff's claims with prejudice. Dkt. 22.

## LEGAL STANDARD

A complaint withstands dismissal under Federal Rule of Civil Procedure 12(b)(6) if the alleged facts state a claim for relief that is "plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard does not require detailed factual allegations but demands more than an unadorned accusation. *Id.* All facts are accepted as true and viewed in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

At the dismissal stage, a court may consider matters judicially noticed, such as public records, without converting a defendant's motion to one for summary judgment. *See Universal Express, Inc. v. S.E.C.*, 177 F. App'x 52, 52 (11th Cir. 2006). Additionally, documents may be considered at the dismissal stage if they are central to, referenced in, or attached to the complaint. *LaGrasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). Documents attached to a motion to dismiss may also be considered if the documents are (1) central to the plaintiff's claim, and (2) undisputed (if their authenticity is not challenged). *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

## DISCUSSION

The Court will address each of Plaintiff's claims in turn.

### I.  Title VII (Count I)

"Title VII prohibits employers from discriminating 'against any individual with respect to [his or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *McCann v. Tillman*, 526 F.3d 1370, 1373 (11th Cir. 2008) (quoting 42

4

U.S.C. § 2000e-2(a)(1)). Further, under the Pregnancy Discrimination Act of 1978, Title VII applies with equal force to employment discrimination based on pregnancy. *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 212 (2015).

A plaintiff may "use direct evidence, circumstantial evidence, or both" to demonstrate pregnancy-based discrimination in violation of Title VII. *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 944 (11th Cir. 2023); *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir. 1999). "[D]irect evidence is composed of 'only the most blatant remarks, whose intent could be nothing other than to discriminate' on the basis of some impermissible factor." *Id.* (quoting *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989)). Where there is no direct evidence, a plaintiff can establish a circumstantial case by evincing that: "'(1) she is a member of a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated [non-pregnant] employees more favorably; and (4) she was qualified to do the job.'" *McCann*, 526 F.3d at 1373 (quoting *EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000)). That said, "a plaintiff need not plead the elements of a prima facie case to survive a motion to dismiss" and a "plaintiff's failure to produce a comparator does not necessarily doom the plaintiff's case" at any stage. *Tynes*, 88 F.4th 946. The key consideration on a Rule 12(b)(6) motion is whether the alleged facts state a plausible claim for relief. *See Swierkiewicz v. Sorema N. A.*, 534

5

U.S. 506, 511 (2002) (explaining that "the ordinary rules for assessing the sufficiency of a complaint apply" in Title VII cases).

The Court begins its analysis by noting the fundamental weakness of Plaintiff's original pleading; namely, its failure to assert facts which showed a material lapse in health insurance coverage. This failure called into question whether Plaintiff's "termination" qualified as an "adverse employment action" because the Court was left to guess as to whether Plaintiff's conditions of employment had been adversely affected during her "leave." *See Short v. Immokalee Water & Sewer Dist.*, 165 F. Supp. 3d 1129, 1146 n.3 (M.D. Fla. 2016) (explaining that an adverse employment action generally must involve "an ultimate employment decision . . . or other conduct that alters the employee's compensation, terms, conditions, or privileges of employment, deprives [her] of employment opportunities, or adversely affects [her] status as an employee").

"To prove an adverse employment action in a case under Title VII's antidiscrimination clause, an employee must show a serious and material change in the terms, conditions, or privileges of employment." *Holland v. Gee*, 677 F.3d 1047, 1057 (11th Cir. 2012) (cleaned up) (internal quotations and citation omitted). On the facts alleged in the Amended Complaint, Plaintiff suffered just that. Her insurance benefits were cut off without notice when she took what she believed to be fully protected maternity leave, resulting in a loss of approximately $6,500. When

6

questioned about this action, moreover, Defendant, allegedly explained that "I have that you were terminated on January 6, 2022, for maternity leave." Dkt. 18 at 5. These facts alone paint a mosaic of circumstantial evidence that might allow a reasonable jury to infer that Defendant intentionally discriminated against Plaintiff based on her pregnancy. *See Lewis v. City of Union City, Georgia*, 934 F.3d 1169, 1185 (11th Cir. 2019) (explaining that a proper comparator simply may not exist in every workplace" and that a "convincing mosaic" of circumstantial evidence may be sufficient without a comparator). Plaintiff's Title VII disparate treatment claim is therefore plausible under a 12(b)(6) standard despite any contrary inferences that might be drawn from Defendant's other communications. *See Pielage*, 516 F.3d at 1284. And this is all that is required for Count I to survive Defendant's Motion.[1] *See Ashcroft*, 556 U.S. at 678.

## II. FCRA (Count II)

"Florida courts have held that decisions construing Title VII are applicable when considering claims under the [FCRA], because the Florida act was patterned after Title VII." *Harper v. Blockbuster Ent. Corp.*, 139 F.3d 1385, 1387 (11th Cir.

---

[1] Plaintiff's Amended Complaint also articulates an ostensibly plausible disparate impact claim that was not included in Plaintiff's original complaint. Dkt. 18 at 10; *see generally* Dkt. 1. Defendant's Motion fails to directly address this claim or otherwise explain its insufficiency under Rule 12(b)(6). *See generally* Dkt. 22. Count I would therefore survive dismissal even if the Court found Plaintiff's disparate treatment claim lacking.

7

1998) (collecting cases). Accordingly, for the same reasons that she has plausibly alleged a Title VII claim, Plaintiff has plausibly alleged an FCRA claim.

### III.   COBRA (Count III)

COBRA allows employees and their dependents to extend health coverage under an employer's group health plan when coverage would otherwise be lost due to a "qualifying event." One type of qualifying event is termination of employment for reasons other than gross misconduct. *See* 29 U.S.C. § 1163(2). The employer must notify its healthcare administrator of the employee's termination within 30 days, *id.* § 1166(a)(2), and the administrator then must notify the employee of her continuation right within 14 days, *id.* § 1166(a)(4)(A), (c). If a terminated employee does not receive notice of her COBRA rights, she may file a civil action to enforce her rights. § 1132(a).

In the instant case, Defendant does not argue that it provided notice, but argues that there was no qualifying event or resulting damages to trigger COBRA liability. The Court disagrees. As noted above, Defendant itself allegedly told Plaintiff that she was "terminated on January 6, 2022, for maternity leave." Dkt. 18 at 5. Defendant nevertheless provided no notice of Plaintiffs COBRA rights and, as a result, Plaintiff allegedly suffered $6,500 in damages. Plaintiff's COBRA claim is plausible.

8

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

(1) Defendant's Motion to Dismiss (Dkt. 22) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, on January 17, 2024.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record